COURT OF APPEALS
DECISION
DATED AND FILED

September 30, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2019AP953**

**STATE OF WISCONSIN**

Cir. Ct. No. 2015IN47

**IN COURT OF APPEALS
DISTRICT II**

IN RE THE ESTATE OF DOUGLAS P. DAHM:

EDWARD J. RITGER,

    APPELLANT,

V.

ESTATE OF DOUGLAS P. DAHM BY ITS PERSONAL REPRESENTATIVE, CHERYL H. DAHM,

    RESPONDENT.

APPEAL from a judgment and an order of the circuit court for Sheboygan County: REBECCA L. PERSICK, Judge. *Affirmed*.

Before Neubauer, C.J., Reilly, P.J., and Davis, J.

¶1 REILLY, P.J. Edward J. Ritger appeals from a judgment entered on claims he filed against the Estate of Douglas P. Dahm (the Estate) and from an

order denying his motion for reconsideration. On appeal, Ritger challenges (1) the court's grant of a motion to enlarge the Estate's time to object to his claim of $56,301.64, (2) the court's finding of excusable neglect on the part of the Estate in failing to timely file its objection, and (3) the court's award of $18,207.37 on his claim of $56,301.64. We affirm.

*Facts*

¶2 Douglas P. Dahm and his wife Cheryl H. Dahm were married for thirty-plus years and had six children. Douglas had dementia in his later years and was incompetent. Cheryl was advised for financial reasons[1] that she should divorce Douglas. Cheryl commenced a divorce action on April 24, 2012. Ritger and his law firm represented Douglas in the divorce action. Cheryl ultimately dismissed the divorce action when the court refused to approve the unequal property division. The divorce action was formally dismissed on August 26, 2013.

¶3 Shortly after the divorce action was dismissed, Ritger represented Douglas's son, Doug, Jr., in a guardianship proceeding in which Doug, Jr. petitioned the court to be appointed Douglas's legal guardian. Cheryl opposed Doug, Jr. being appointed as guardian and petitioned the court to be named Douglas's guardian of person and estate. Ritger eventually withdrew as Doug, Jr.'s attorney when his conflict of interest in representing Doug, Jr. against Douglas was impressed upon him.

---

[1] The goal was to save the family farm by awarding all the assets to Cheryl so Douglas's nursing home care would be paid by Medical Assistance.

¶4      Cheryl was appointed as Douglas's legal guardian of person and estate on January 18, 2014.  Ritger, aware that Cheryl was guardian of Douglas's estate, never sought payment from Cheryl for the legal services he rendered to Douglas in the divorce action in the span of almost eighteen months between when the divorce was dismissed and Douglas's death on February 20, 2015.

¶5      Probate was commenced on March 13, 2015, and Cheryl was appointed personal representative of the Estate.  Andrew Krajnek was retained as attorney for the Estate.  Ritger timely and properly filed his claim for $56,301.64 on June 25, 2015.  The Estate failed to file a formal objection to Ritger's claim within sixty days as required by WIS. STAT. § 859.33(1).[2]  Krajnek failed to inform

---

[2] WISCONSIN STAT. § 859.33(1) (2017-18) provides:

> **(1)** HOW CONTEST INITIATED.  The following persons may contest a claim or assert an offset or counterclaim in court: the personal representative, a guardian ad litem or a person interested who has the approval of the court.  They may do so only by mailing a copy of the objection, offset or counterclaim to the claimant or personally serving the same upon the claimant and filing the same with the court.  The objection, offset or counterclaim may be served at any time prior to entry of judgment on the claim, but if a copy of the claim has been mailed to or served upon the personal representative or the attorney for the estate, the objection, offset or counterclaim shall be served upon or mailed to the claimant and filed with the court within 60 days after the copy of the claim was mailed to or served upon the personal representative or the attorney for the estate.  The personal representative shall not be obligated to assert any offset or counterclaim in court and may, if he or she deems it to be in the best interests of the estate, assert the offset or counterclaim in any separate action otherwise authorized by law outside the court proceedings.  Any offset or counterclaim so asserted shall be deemed denied by the original claimant.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

3

Cheryl of Ritger's claim. When Cheryl learned of Ritger's claim, she instructed Krajnek to oppose it. Krajnek failed to do so, and Cheryl decided new counsel for the estate was needed and retained Attorney Kim Rietbrock in September 2016.

¶6 Rietbrock informally notified Ritger in early December 2016 that the Estate objected to his claim. Ritger and Rietbrock corresponded for almost one year in an attempt to resolve the dispute over Ritger's claim,[3] but Rietbrock did not move the probate court for an enlargement of time to file an objection. Rietbrock, who held herself out as a probate administrator and not a litigator, came to the conclusion that she was not going to be able to resolve Ritger's claim short of litigation and informed Cheryl that she needed to obtain trial counsel to litigate Ritger's claim in court. While Rietbrock remained the Estate's counsel, the Estate retained separate counsel to litigate the Estate's objection to Ritger's claim.

¶7 The Estate filed a formal objection to Ritger's claim on January 23, 2018. Ritger responded with a motion for summary judgment, arguing that the court did not have "subject matter jurisdiction"[4] as the Estate's objection was not filed within sixty days of his claim pursuant to WIS. STAT. § 859.33(1). The Estate responded with a Motion to Enlarge Time to File Objection pursuant to WIS.

---

[3] Ritger wrote an e-mail to Rietbrock on January 18, 2017, referencing a conversation they had on December 6, 2016, in which they discussed proposals to "resolve the claims." Ritger related that health issues in his family caused him to be away from his legal matters. On June 2, 2017, Ritger wrote to Rietbrock thanking her for her recent email and stating, "I really appreciate your indulgence in letting this slide," and again explained health issues in his family. On July 11, 2017, Ritger wrote to Rietbrock stating, "I'm finally working on an analysis of why I should be paid more than the $20,000 you offered for my claim." Negotiations between Ritger and Rietbrock broke down in August 2017.

[4] Ritger has abandoned his subject matter jurisdiction argument on appeal.

STAT. § 801.15(2)(a), asking the court to accept its late-filed objection to Ritger's claim.

¶8  The circuit court held a hearing on the motions, denying Ritger's motion for summary judgment and granting the Estate's motion to enlarge time to file its objection.  Ritger filed a motion for reconsideration of the circuit court's order, which the court denied.  The court then held a bench trial on the Estate's objection to Ritger's claim and entered a judgment on claims allowing Ritger's claim in the reduced amount of $18,207.37.  Ritger filed a second motion for reconsideration, which the court also denied.  Ritger appeals.

*Motion Hearing: Competency*

¶9  Ritger's primary claim on appeal is that the "court lacked the competency to grant any relief of any kind to the Estate" on the ground that the Estate did not object within sixty days as required by WIS. STAT. § 859.33(1).  We begin by noting two problems:  (1) challenges to court competency are forfeited if not timely raised in the circuit court, *City of Eau Claire v. Booth*, 2016 WI 65, ¶11, 370 Wis. 2d 595, 882 N.W.2d 738; and (2) an appellant must develop an argument to an issue he or she raises, *State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not address inadequately developed arguments).  Ritger did not raise the issue of competency in the circuit court, and, contrary to his assertion, subject matter jurisdiction and competency are not the same concept.  Further, he does not sufficiently develop an argument on appeal as to why and how competency applies to the failure to file an objection within sixty days under § 859.33(1).  We could end our review on forfeiture; however, given our inherent authority to disregard forfeiture, we will briefly address why the court did have competency.  *Booth*, 370 Wis. 2d 595, ¶11.

¶10 Competency is not a jurisdictional concept, rather it is the "the power of a court to exercise its subject matter jurisdiction in a particular case." *Id.*, ¶7 (citation omitted). As relevant to this appeal, noncompliance with a statutory mandate may affect a court's power to act, but it never affects a court's subject matter jurisdiction. *Id.*, ¶¶7, 14. As best we can decipher, Ritger is arguing that the Estate's failure to comply with the mandatory language set forth in WIS. STAT. § 859.33(1)—that an objection "shall" be filed within sixty days—results in a loss of competency if an Estate fails to object within the sixty-day period. Ritger's core argument is that he was entitled to a default judgment the moment the sixty days elapsed and that the Estate lost any ability to object to his claim.

¶11 The fallacy of Ritger's competency argument is borne out by the fact that had Ritger promptly moved for judgment following the sixty days elapsing, and had the court granted judgment to Ritger for $56,301.64, the Estate would have had the statutory right under WIS. STAT. § 806.07 to ask the court for relief from the judgment and the court would have the power to act (competency) on such a motion. Likewise, the Estate had the statutory right to move the court to enlarge the time to file its objection to Ritger's claim as WIS. STAT. § 801.15(2)(a) provides a party the right to seek relief from a time requirement, even if the motion is "made after the expiration of the specified time." *Id.*; *cf. Flejter v. Estate of Flejter*, 2001 WI App 26, ¶¶19, 26, 240 Wis. 2d 401, 623 N.W.2d 552 (applying § 801.15(5)(a)'s three-day mailing provision to WIS. STAT. § 859.33(1)'s sixty-day deadline). The court had competency to address the Estate's motion to enlarge time.

*Motion to Enlarge Time:  Excusable Neglect*

¶12     As the court had competency to act on the Estate's motion to enlarge time, we next address Ritger's argument that the Estate did not prove excusable neglect in its failure to timely file its objection pursuant to WIS. STAT. § 859.33.  A party who moves pursuant to WIS. STAT. § 801.15(2)(a) when the time to act has already expired must show that the failure to act was the result of excusable neglect.  Whether a court grants an extension of time to act is a discretionary decision on the part of the court.  *Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 467, 326 N.W.2d 727 (1982); *St. Francis Sav. & Loan Ass'n v. Hearthside Homes, Inc.*, 75 Wis. 2d 476, 479, 249 N.W.2d 924 (1977).  A finding of excusable neglect by the circuit court "will not be disturbed by an appellate court unless an [erroneous exercise] of discretion is clearly shown."  *Hedtcke*, 109 Wis. 2d at 470.  "The decision of the circuit court need not be one that this court would have rendered, but it must be based on a reasonable inquiry and examination of the facts."  *Casper v. American Int'l S. Ins. Co.*, 2011 WI 81, ¶36, 336 Wis. 2d 267, 800 N.W.2d 880.

¶13     Excusable neglect is described as "that neglect which might have been the act of a reasonably prudent person under the same circumstances." *Hedtcke*, 109 Wis. 2d at 468 (citation omitted).  "It is 'not synonymous with neglect, carelessness or inattentiveness.'"  *Id.* (citation omitted).  Further, as our supreme court explained in *Casper*,

> The denial of a motion for enlargement of time often results in a default judgment for the plaintiffs, a result disfavored by the law, which "prefers, whenever reasonably possible, to afford litigants a day in court and a trial on the issues." *Dugenske v. Dugenske*, 80 Wis. 2d 64, 68, 257 N.W.2d 865 (1977) (citing *Quinn Distribs., Inc. v. Miller*, 43 Wis. 2d 291, 296, 168 N.W.2d 552 (1969)).  On the other hand, the court also must be cognizant of the policies of prompt adjudication that can be advanced when a party that

> has failed to timely respond is held accountable for such delay. *Id.* It is these considerations, together with the particular facts of the case, that must inform the circuit court's decision whether to grant a motion to enlarge time.

*Casper*, 336 Wis. 2d 267, ¶38. The burden of establishing excusable neglect is on the party seeking relief from a default judgment. *See **Carmain v. Affiliated Capital Corp.***, 2002 WI App 271, ¶23, 258 Wis. 2d 378, 654 N.W.2d 265.

¶14 We conclude the circuit court properly exercised its discretion. As an initial matter, we acknowledge that the circuit court's decision analyzed the issue by utilizing the five factors set forth in an unpublished decision of this court, ***Estate of Rainey v. Rainey-Dargitz***, No. 2014AP1302-FT, unpublished slip op. (Ct. App. Nov. 5, 2014), which the Estate cited in a letter brief to the court.[5] Despite the court recognizing that no judgment had been granted to Ritger in this case, it addressed the Estate's motion as if judgment had been granted and that the

---

[5] ***Estate of Rainey v. Rainey-Dargitz***, No. 2014AP1302-FT, unpublished slip op (WI App Nov. 5, 2014), is an unpublished per curiam decision of this court, and accordingly, cannot be "cited in any court of this state as precedent or authority." *See* WIS. STAT. § 809.23(3)(b). The circuit court recognized this fact at the hearing on Ritger's motion for reconsideration. In *Rainey*, similar to this case, the attorney for the estate failed to file an objection to a claim within sixty days, but there, the court granted a default judgment and allowed the claim against the estate. *Rainey*, No. 2014AP1302-FT, ¶2. The estate filed motions for reconsideration and relief from judgment pursuant to WIS. STAT. § 806.07, which the circuit court denied. *Rainey*, No. 2014AP1302-FT, ¶¶3-4. As the parties recognized upon briefing to this court, in this case, no judgment had been entered at the time the Estate filed the motion to enlarge time; therefore, § 806.07 is inapplicable under the circumstances. Although the circuit court's reliance on *Rainey* was inappropriate, we address the five factors as they hail from ***Miller v. Hanover Ins. Co.***, 2010 WI 75, ¶36, 326 Wis. 2d 640, 785 N.W.2d 493, and are relevant to the discussion of the excusable neglect standard.

Estate was seeking relief from the judgment.[6] The five factors include: (1) "whether the judgment was the result of the conscientious, deliberate and well-informed choice of the claimant"—the court found Cheryl did not initially know of Ritger's claim and she told her attorneys to oppose it; (2) "whether the claimant received the effective assistance of counsel"—the court found ineffective assistance of counsel; (3) "whether relief is sought from a judgment in which there has been no judicial consideration of the merits and the interest of deciding the particular case on the merits outweighs the finality of judgments"— no judgment had been granted; (4) "whether there is a meritorious defense to the claim"—the court determined there was; and (5) "whether there are intervening circumstances making it inequitable to grant relief"—the court observed that Rietbrock and Ritger were informally attempting to negotiate a resolution, and only when such a resolution could not be achieved did Rietbrock bow out in favor of a trial attorney to handle resolution of the claim. *See Miller v. Hanover Ins. Co.*, 2010 WI 75, ¶36, 326 Wis. 2d 640, 785 N.W.2d 493 (citation omitted).

¶15 Recognizing that the circuit court failed to specifically address the excusable neglect standard under WIS. STAT. § 801.15(2)(a), we agree with the Estate that the circuit court's exercise of discretion in granting the Estate's motion to enlarge time was sufficient to be upheld on appeal. "Because the exercise of

---

[6] WISCONSIN STAT. § 806.07 provides the terms under which a court may relieve a party from a judgment, including "[m]istake, inadvertence, surprise, or excusable neglect" and a "catchall" provision, which allows a party to seek relief for "[a]ny other reasons justifying relief from the operation of the judgment." Sec. 806.07(1)(a), (h). In a claim seeking relief under § 806.07(1)(h), the movant carries the burden to establish the existence of "extraordinary circumstances" that "justify[] relief in the interest of justice." *Miller*, 326 Wis. 2d 640, ¶¶34-35. Extraordinary circumstances exist only in "extreme and limited cases," *Connor v. Connor*, 2001 WI 49, ¶43, 243 Wis. 2d 279, 627 N.W.2d 182, and require the court to consider a wide range of factors, most notably, the "five interest of justice factors," *Miller*, 326 Wis. 2d 640, ¶¶36, 49.

discretion is so essential to the [circuit] court's functioning, we generally look for reasons to sustain discretionary decisions." **Burkes v. Hales**, 165 Wis. 2d 585, 591, 478 N.W.2d 37 (Ct. App. 1991) (citation omitted). Therefore, even where the circuit court relied on the wrong rationale, we may affirm the court's decision if we determine that the record provides a basis for it. *See State v. Gray*, 225 Wis. 2d 39, 51, 590 N.W.2d 918 (1999).

¶16    Here, we conclude that the Estate's late-filed objection to Ritger's claim constitutes excusable neglect. The court considered Cheryl's initial lack of knowledge of Ritger's claim as a result of Krajnek's failure to communicate the existence of the claim.[7] Krajnek should have recognized that WIS. STAT. § 859.33 provided the Estate sixty days to object to the claim and should have communicated the existence of the claim, and the sixty-day deadline, to Cheryl. When Cheryl eventually became aware of the claim, she instructed Krajnek to contest the claim; when she did not hear from him after a couple months, she followed up with him; and when he ultimately failed to file an objection, she replaced him with Rietbrock. Although Rietbrock also failed to formally object to the claim or file a motion to enlarge time, she negotiated the claim with Ritger. Under these circumstances, the circuit court found that the Estate had received ineffective assistance of counsel.

¶17    Our supreme court has established that "[a] litigant is not to be penalized for the neglect or mistakes of his lawyer. Courts will relieve parties from the consequences of the neglect or mistakes of their attorney, when it can be

---

[7] Cheryl learned of the claim from her son who was attempting to purchase some of the Estate's land.

done without substantial prejudice to their adversaries." ***Paschong v. Hollenbeck***, 13 Wis. 2d 415, 422, 108 N.W.2d 668 (1961) (citation omitted). Negligence, "ill advice, … mistake of law, or … failure on the part of an attorney, may constitute excusable neglect on the part of the client when the client has acted as a reasonable, prudent person in engaging an attorney of good reputation, has relied on him [or her] to protect his [or her] rights, and has made reasonable inquiry concerning the proceeding." ***Id.*** at 422-24. The circuit court must consider the circumstances in each case and exercise its "equitable powers to secure substantial justice between the parties." ***Id.*** at 424.

¶18     In this case, the circuit court properly considered the circumstances that it found constituted ineffective assistance of counsel. Recognizing that Cheryl, as personal representative of the Estate, took steps to make a reasonable inquiry into the proceeding—including contacting Krajnek, informing him to object to the claim, following up, and finally replacing counsel—we conclude that Cheryl, and the Estate, acted as a reasonable, prudent person and the conduct of the attorneys should not be imputed to the Estate and their ineffective assistance constitutes "reasonable grounds for noncompliance with the statutory time period." ***Hedtcke***, 109 Wis. 2d at 468.

¶19     Pursuant to our supreme court's instruction in ***Hedtcke***, the circuit court must also "go further than considering the causes for the neglect" to consider "[t]he interests of justice," which "require the circuit court to be aware of the effects of an order denying or granting relief." ***Id.*** at 469. "The interests of justice require the court to consider the sometimes contradictory interests in affording litigants a day in court, and in ensuring prompt adjudication." ***Rutan v. Miller***, 213 Wis. 2d 94, 102, 570 N.W.2d 54 (Ct. App. 1997). "In making this assessment, the court should look to such factors as 'whether the dilatory party has

11

been acting in good faith, and whether the opposing party has been prejudiced.'" *Id.* (citation omitted). When a court is presented with a motion to enlarge time the court should also consider whether the motion was filed within a reasonable time after expiration of the statutory period and, if not, whether there was a reasonable basis for the delay. *Id.* We conclude that the circuit court's discussion satisfied these requirements.

¶20 First, the circuit court observed that a meritorious defense to Ritger's claim existed, recognizing that the Estate was entitled to its day in court as Ritger was "entitled to some amount of money for the representation" but there was a dispute as to the "fees charged for a period of time when [Ritger] wasn't representing [Douglas]." Further, as we acknowledged above, the Estate, by Cheryl, acted in good faith as once she learned of the claim she took steps to ensure that an objection was filed. And finally, we note that Ritger was not prejudiced. The circuit court observed that as of December 2016, Ritger knew his claim was being objected to, and Ritger and Rietbrock exchanged correspondence aimed at negotiating a resolution to the claims for close to a year afterwards. At no point during this time did Ritger move for judgment on his claim or raise an issue about the lack of a formal objection having been filed. Further, the court noted that Ritger's health-related issues delayed the case.

¶21 The circuit court acknowledged Wisconsin's strong preference for giving litigants their day in court to litigate the issues and found that "valid reasons" existed for the court to grant the Estate's request to enlarge the time for objection. We conclude that the court did not erroneously exercise its discretion.

*Court Trial*

¶22    Ritger next argues that the circuit court erred in its decision on the merits as to the amount of his claim. The court held a bench trial on October 18, 2018, and issued an oral ruling on the claim on December 13, 2018. The court entered judgment on Ritger's claim but reduced the claim from $56,301.64 to $18,207.37.[8] The court awarded fees to Ritger for his representation of Douglas with respect to the *divorce*, but it refused to award Ritger fees for representing Doug, Jr. in the contested guardianship proceeding.

¶23    On appeal, Ritger argues that Douglas appointed Doug, Jr. as his Financial Durable Power of Attorney on May 10, 2012, and that the Fee Agreement's inclusion of the phrase "and other legal matters" in conjunction with the agency powers conferred on Doug, Jr. would allow Ritger to provide all legal service "Ritger provided to or on behalf of" Douglas during this time, not limited to providing services for the divorce action. The Estate does not contest the judgment awarded to Ritger and asks that the circuit court's award of $18,207.37 be upheld on appeal. We conclude that the main issue on appeal is whether denial of the total amount of the claim was supported by the evidence.

¶24    This court has explained that

> Following a bench trial, "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the [circuit] court to judge the credibility of the witnesses." WIS. STAT. § 805.17(2). We will therefore not upset a [circuit] court's findings of fact unless they are clearly erroneous, nor will we reweigh evidence or assess witness credibility. ***Dickman v.***

---

[8] The total amount of fees awarded was $21,931.50, less the $3,724.13 that Ritger already received.

> *Vollmer*, 2007 WI App 141, ¶14, 303 Wis. 2d 241, 736 N.W.2d 202. "Findings of fact made by the trial court with regard to damages will not be upset by us unless clearly erroneous." *Three & One Co. v. Geilfuss*, 178 Wis. 2d 400, 410, 504 N.W.2d 393 (Ct. App. 1993).

*Cianciola, LLP v. Milwaukee Metro. Sewerage Dist.*, 2011 WI App 35, ¶12, 331 Wis. 2d 740, 796 N.W.2d 806. We will not reverse circuit court findings "unless [such findings] are against the great weight and clear preponderance of the evidence." *Cogswell v. Robertshaw Controls Co.*, 87 Wis. 2d 243, 249, 274 N.W.2d 647 (1979).

¶25 We uphold the circuit court's judgment on appeal. Evidence produced at trial reflected that Ritger never sent a legal bill to Douglas or Cheryl, his guardian, for his legal services in the eighteen months prior to Douglas's death and only asked for payment after Douglas passed away. Ritger's legal bills[9] reflected that approximately fifty percent of his claim was for work he or his law firm did for Doug, Jr. in the contested guardianship proceedings. The court found that most of Ritger's billing up through the divorce proceeding were legitimate, but it found that the time where Ritger and his firm provided services for Doug, Jr. in the guardianship proceeding were not proper claims against the Estate and denied those charges. The court explained,

> Turning to the Ritger Law Office claim. So there doesn't seem to be any dispute that it was a conflict of interest for Ritger Law Office to represent [Doug, Jr.] on a petition for guardianship against Douglas … after they had represented Douglas … in the divorce case.
>
> ….

---

[9] The claim filed by Ritger against the Estate included over fifty pages of line-item charges. Approximately twenty-three pages of Ritger's itemized billings contained in his claim against the Estate were for charges incurred after the divorce action had been dismissed.

> So Ritger Law Offices shouldn't have been involved. And by saying that, I'm not saying that they shouldn't be paid for what they did, but they shouldn't be paid by the Estate. At that point when the guardianship action was commenced, the client would have been [Doug, Jr.] And Ritger Law Offices can seek reimbursement for any action they took regarding the guardianship from [Doug, Jr.]

The court also concluded that the language from the fee agreement indicating that Ritger was retained for "the divorce and other legal matters" was "so vague as to be unenforceable" and "basically gives Ritger Law Office free reign to do anything they want in the name of other legal matters." Further, the court noted that there was an opportunity for Ritger to obtain fees in the guardianship case as there was a hearing on claims in April 2014, but Ritger did not request fees at that time.[10]

¶26    The court examined Ritger's billing records line by line and found, after deducting what Ritger had already received, that he had a claim against the Estate for $18,207.37, and so ordered judgment. There was certainly no error by the court in denying that portion of Ritger's claim that were for services provided to someone other than Douglas and denying the charges that post-dated the divorce action.

*Conclusion*

¶27    As the court had competency to entertain the Estate's motion to enlarge time, properly exercised its discretion in finding excusable neglect, and the evidence was more than sufficient to support the court's findings of fact at the court trial, we affirm.

---

[10] The circuit court in the guardianship proceeding did award fees to the attorney who took over as counsel for Doug, Jr.

15

*By the Court.*—Judgment and order affirmed.

Not recommended for publication in the official reports.